**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

LAURA HERNANDEZ,

    Plaintiff,

v.                                      Case No. 3:14-cv-1124-J-32JBT

DYCK-O'NEAL, INC., LAW OFFICES
OF DANIEL C. CONSUEGRA, P.L.,

    Defendants.

## <u>O R D E R</u>

This case is before the Court on Defendants Dyck-O'Neal, Inc.'s and Law Offices of Daniel C. Consuegra, P.L.'s Motions to Dismiss. (Docs. 7, 11.) Plaintiff Laura Hernandez filed responses (Docs. 14, 17) and the Court permitted Defendants to file replies (Docs. 22, 23).[1]

**I.    BACKGROUND**

As alleged in Hernandez's Complaint, on May 2, 2014, Defendant Dyck-O'Neal, Inc. sent a collection notice to Hernandez regarding debt arising from "Plaintiff's purchase of her former residence." (Doc. 1 at 2.) On May 19, 2014, Hernandez filed a petition for relief under Title 11, Chapter 7 of the United States Bankruptcy Code. (Doc. 1 at 3.) In Schedule F of Hernandez's bankruptcy petition, she listed Dyck-O'Neal as assignee for the original creditor, First Magnus Financial Corporation. (<u>Id.</u>)

---

[1] Consuegra's Reply essentially reproduced Dyck-O'Neal's Reply in its entirety.

Hernandez alleges that Dyck-O'Neal received notice of the bankruptcy case on May 23, 2014, yet on June 4, 2014, Consuegra, on behalf of Dyck-O'Neal, sent a collection notice to Hernandez to collect the debt referenced in the May 2 letter. (Id.) Hernandez further alleges that on June 16, 2014, Consuegra, "at the direction of Dyck-O'Neal," filed a deficiency action against Hernandez in Duval County Circuit Court seeking recovery of the pre-petition debt listed in Schedule F of her Chapter 7 petition. (Id.; see also Doc. 1-6 at 5-6.)

On September 16, 2014, Hernandez filed this action asserting that the May 2 letter, the June 4 letter, and the deficiency action each violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") and its state counterpart, the Florida Consumer Collection Practices Act ("FCCPA"), as to Dyck-O'Neal. (Doc. 1 ¶¶ 20-33.) Additionally, Hernandez asserts that the June 4 letter and the deficiency action each violate the FDCPA as to Consuegra. (Doc. 1 ¶¶ 34-41.)

## II.   STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Ray v. Spirit Airlines, Inc., 767 F.3d 1220, 1223 (11th Cir. 2014) (citing Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011)). The Court should dismiss a claim where a party fails to plead facts that make the claim facially plausible. Ray, 767 F.3d at 1223 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the Court can draw a reasonable inference,

based on the facts pled, that the opposing party is liable for the alleged misconduct. Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully," and where the complaint only alleges facts "merely consistent with" liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556 (2007)) (internal quotation omitted). In making this plausibility determination, the Court must accept the factual allegations as true; however, this "tenet . . . is inapplicable to legal conclusions." Id.

### III. ANALYSIS

#### A. Dyck-O'Neal's Motion to Dismiss Hernandez's Complaint

Dyck-O'Neal argues that Hernandez's Complaint fails to state a claim upon which relief may be granted because (1) Dyck-O'Neal's May 2 letter was not an attempt to collect a debt and therefore does not fall under the purview of the FDCPA (Doc. 7 at 4); (2) Dyck-O'Neal's state court lawsuit against Hernandez is not subject to the FDCPA or the FCCPA because a deficiency action does not fall under the purview of the FDCPA or the FCCPA (Doc. 7 at 9); and (2) Hernandez's FCCPA claims are preempted by federal bankruptcy law (Doc. 7 at 12).

##### 1. <u>Whether the May 2 Letter Was an Attempt to Collect a Debt</u>

Hernandez asserts that the May 2 letter violated the FDCPA because it failed to provide the requisite information per 15 U.S.C § 1692g(a). (Doc. 1 ¶ 25(a)-(e).) Dyck-O'Neal contends, however, that the May 2 letter was merely informational, not an attempt to collect a debt, and therefore does not fall within the FDCPA. (Doc. 7 at 4, 6.) Dyck-O'Neal further contends that the May 2 letter was merely a notice of

3

assignment of debt and is required by Fla. Stat. § 559.715.[2] (Doc. 7 at 5.) In support of its position, Dyck-O'Neal cites to Parker v. Midland Credit Mgmt., Inc., 874 F. Supp. 2d 1353 (M.D. Fla. 2012), a case regarding a letter from a debt collector that is essentially identical to the May 2 letter. The Parker court held that the letter merely informed the debtor of the assignment of debt and was, as a matter of law, "not a communication in connection with debt collection." Id. at 1358.

Hernandez contends that Parker is persuasive, but not mandatory authority and instead cites to LeBlanc v. Unified CCR Partners, 601 F.3d 1185 (11th Cir. 2010) for the proposition that whether the "least-sophisticated consumer" would consider the initial communication to be a collection of debt is an issue to be determined by a trier of fact. (Doc. 14 at 9.) In LeBlanc, the defendant debt collector was not registered in the State of Florida as an "out-of-state consumer debt collector" as required by section 559.553(4) of the Florida Statutes. LeBlanc, 601 F.3d at 1189. The debt collector sent

---

[2] The May 2 letter stated, in pertinent part:

The purpose of this letter is to advise you that the above referenced account has been assigned to Dyck-O'Neal, Inc. by Fannie Mae Deficiencies. Accordingly, all future communication regarding the account should be addressed to Dyck-O'Neal, Inc., not the previous owner. <u>No collection efforts will occur on this account for at least 30 days from the date of this notice</u>. If an attorney represents you with regard to this debt, please refer this letter to your attorney. Likewise, if you are involved in an active bankruptcy case, or if this debt has been discharged in a bankruptcy case, please refer this letter to your bankruptcy attorney so that we may be notified. <u>Although this communication is from a debt collector, this is not an attempt to collect a debt</u>. This is a Notice of Assignment in accordance with the Florida Debt Buyer statute FCCPA 559.715.

(Doc. 1-2 at 2 (emphasis added).)

4

a letter to notify LeBlanc that it had purchased LeBlanc's debt. Id. at 1188. However, in addition, the letter stated

> If we are unable to resolve this issue within 35 days we may refer this matter to an attorney in your area for legal consideration. If suit is filed and if judgment is rendered against you, we will collect payment utilizing all methods legally available to us, subject to your rights below.
>
> * * *
>
> This communication is from a debt collector. <u>This is an attempt to collect a debt and any information obtained will be used for that purpose</u>.

Id. (emphasis added).

The issue presented in LeBlanc was not whether the letter was an attempt to collect a debt, rather it was whether the letter was a "threat to take legal action." Id. at 1195. In reversing the district court's grant of partial summary judgment for LeBlanc, the Eleventh Circuit held that whether the "letter could reasonably be perceived as a threat to take legal action under the least–sophisticated consumer standard in the circumstances of this case is best left to jury decision." Id. (internal quotations omitted).

The May 2 letter here is distinguishable from the letter in LeBlanc because the May 2 letter expressly stated that it was <u>not</u> an attempt to collect a debt, whereas the letter in LeBlanc expressly stated that it was an attempt to collect a debt. The May 2 letter was merely informational because it informed Hernandez of the assignment of debt as required by section 559.715 of the Florida Statutes. Accordingly, agreeing with the rationale of Parker, the Court determines as a matter of law that the May 2 letter was not an attempt to collect a debt. Therefore, subsections a – e in paragraph 25 of Count I are stricken with prejudice.

5

## 2. **Whether a Deficiency Action Is Subject to the FDCPA and FCCPA**

Dyck-O'Neal further argues that the Complaint fails to state a claim under the FDCPA and the FCCPA because Hernandez fails to plead sufficient facts which plausibly show that she was "the object of a collection activity arising from consumer debt." (See Doc. 7.) More specifically, Dyck-O'Neal argues that the deficiency action arises under the foreclosure judgment and subsequent foreclosure sale—not the promissory note—and therefore does not constitute a debt for purposes of the FDCPA and FCCPA. (Id. at 7.) The Court has just ruled contrary to Dyck-O'Neal's position in another case, Baggett v. Law Offices of Daniel C. Consuegra, P.L., No. 3:14-cv-1014-J32PDB, 2015 WL 1707479 (M.D. Fla. Apr. 15, 2015) (order denying motion to dismiss), and incorporates that reasoning herein.

In sum, because a right to a deficiency action would not exist but for the existence of a promissory note, it follows that the equitable remedy of a deficiency action arises under the same debt obligation created by the promissory note. Therefore, for purposes of the FDCPA and FCCPA, a deficiency action constitutes a debt collection activity.[3] Accordingly, Hernandez has alleged sufficient facts to plausibly support a cause of action under the FDCPA and FCCPA.[4]

---

[3] In her Response, Hernandez contends that Dyck-O'Neal is judicially estopped from claiming that a deficiency action does not arise under the promissory note because Dyck-O'Neal took a diametrically opposite position in its state court complaint. (Doc. 17 at 7-9.) However, because the Court concludes that a deficiency action is a debt collection activity, the Court does not need to address Hernandez's judicial estoppel argument. Cf. Ward v. AMS Servicing, LLC, No. 14-14052, 2015 WL 1432982 (11th Cir. Mar. 31, 2015).

[4] With the exception for subsections a – e in paragraph 25 of Count I, discussed

6

### 3. Whether Hernandez's FCCPA Claim is Preempted by Federal Bankruptcy Law

Dyck-O'Neal argues that Hernandez's FCCPA claim must fail as a matter of law because "all state law claims premised upon conduct alleged to have occurred in violation of the Bankruptcy Code are preempted by bankruptcy law." (Doc. 7 at 12.)[5] Dyck-O'Neal cites to Williams v. Asset Acceptance, LLC (In re Williams), 392 B.R. 882 (Bankr. M.D. Fla. 2009), in which the bankruptcy court held that the "Bankruptcy Code pre-empts state law claims arising from an abusive bankruptcy filing or other wrongful conduct committed during the course of a bankruptcy case." Id. at 886 (citing MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910 (9th Cir. 1996) (emphasis added). However, Dyck-O'Neal misconstrues the scope of Williams.

In Williams, a creditor filed in a debtor's bankruptcy proceeding a proof of claim which the debtor alleged was barred by the statute of limitations. Id. at 884. Rather than file a simple objection, the debtor filed a multi-count, adversary proceeding against the creditor, alleging violations of the FDCPA and the FCCPA. Id. at 884-85. In dismissing the debtor's claims, the Williams court held that the debt collector "did not engage in any wrongful conduct by filing a proof of claim," and further held that if it were "to apply the FDCPA . . . debtors would be encouraged to file adversary

---

supra.

[5] There is no Florida or federal case that squarely addresses the issue of whether the Bankruptcy Code preempts the FCCPA; however, as Hernandez points out, the circuits are split as to whether the Bankruptcy Code preempts (or more correctly, impliedly repeals) the FDCPA. (Doc. 14 at 7); see Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1262 at n.7 (11th Cir. 2014).

proceedings instead of simply an objection to the creditor's claim . . . ." Id. at 886.

The Williams court, however, distinguished the proof of claim action from cases like Randolph v. IMBS, Inc., 368 F.3d 726 (7th Cir. 2004), wherein the Seventh Circuit applied the FDCPA when a debt collector violated the automatic stay and noted "that Section 362 of the Bankruptcy Code merely overlapped with the FDCPA and did not pre-empt it."[6] Williams, 392 B.R. at 886. By this, the Williams court seems to suggest that "preemption" would not apply in cases where the debt collector's actions violate both the Bankruptcy Code and the FDCPA. Id. (distinguishing Randolph and other cases because they involved violations of "both the Bankruptcy Code and the FDCPA").[7]

---

[6] The Williams court and many other district courts have used the term "preempt" in this context; however, as the Seventh Circuit points out "[o]ne federal statute does not preempt another," rather "the right question is whether one implicitly repeals the other . . . ." Randolph, 368 F.3d at 730 (citing Branch v. Smith, 538 U.S. 254, 273 (2003)). There is a strong presumption against implied repeals, and "[a]n implied repeal will only be found where provisions in two statutes are in 'irreconcilable conflict,' or where the latter Act covers the whole subject of the earlier one and 'is clearly intended as a substitute.'" Branch, 538 U.S. at 273 (quoting Posadas v. Nat'l City Bank, 296 U.S. 497, 503 (1936)). Preemption, however, is the correct doctrine when analyzing conflicting federal and state laws. See Fla. State Conference of NAACP v. Browning, 522 F.3d 1153, 1167 (11th Cir. 2008). There are three types of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption. Id. The analysis of preemption and implied repeal is very similar. See Branch, 538 U.S. at 256-57 (quoting Posadas, 296 U.S. at 503)) ("The presumption against implied repeals, like that against pre-emption, is overcome if there is an irreconcilable conflict between the two provisions or if the later Act was clearly intended to 'cove[r] the whole subject of the earlier one.'" (emphasis added)). Because the analysis of each doctrine is similar, and because the Eleventh Circuit has not ruled on this specific preemption issue, the Court—in determining whether the Bankruptcy Code preempts the FCCPA—draws from the rationale espoused in cases evaluating whether the Bankruptcy Code impliedly repeals the FDCPA .

[7] The Williams court further noted that "applying the FDCPA to issues involving the automatic stay or dischargeability is different than the issues

8

Hernandez argues that this case is distinguishable from Williams because the "collection activity in this case occurred outside the bankruptcy process." (Doc. 14 at 8.) The Court agrees. The filing of a proof of claim is a right within the Bankruptcy Code. See Fed. R. Bankr. P. 3001. To allow a debtor to file a FDCPA or FCCPA claim against a creditor who exercises its right to file a valid proof of claim "would chill creditor's rights in the bankruptcy process, as well as undermine the very mechanisms that are set forth by the Bankruptcy Code to deal with such issues." Pariseau v. Asset Acceptance, LLC (In re Pariseau), 395 B.R. 492, 496 n.3 (Bankr. M.D. Fla. 2008). However, these concerns are not present in circumstances where a debt collector has violated both the Bankruptcy Code and the FDCPA by collection activity occurring outside the bankruptcy process.

In contrast to Williams, the Eleventh Circuit recently determined that the filing of a time-barred proof of claim may form the basis for an FDCPA claim. Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1262 (11th Cir. 2014) (holding that a debt collector violated the FDCPA "by filing a stale claim in bankruptcy court"). [8] In Crawford, the Eleventh Circuit did not address the issue of preemption because it was not argued by the parties. Id. at 1262 n.7. However, allowing the debtor to proceed on an FDCPA claim because the debt collector filed a stale proof of claim—even though a remedy for such a violation exists within the Bankruptcy Code—may be some

---

surrounding the creditor's right to file a claim in a bankruptcy case."

[8] The court in Williams opined that "even filing an invalid proof of claim would be insufficient to form the basis for the claims attempted to be asserted under the FDCPA or the Florida equivalents. . . ." Williams, 392 B.R. at 888. This assessment is likely incorrect in light of the Eleventh Circuit's holding in Crawford.

9


indication that, if presented with the issue, the Eleventh Circuit would hold that the Bankruptcy Code does not categorically preempt (or impliedly repeal) the FDCPA.

The Court agrees with the analysis in Randolph where the Seventh Circuit reasoned that the "operational differences" between the FDCPA and the Bankruptcy Code do not "add up to irreconcilable conflict" and that it is "easy to enforce both statutes, and any debt collector can comply with both simultaneously." Randolph, 368 F.3d at 730. The Seventh Circuit further held that it would be better to think of the statutes as overlapping and "[o]verlapping statutes do not repeal one another by implication." Id. at 731. This same rationale can be logically extended to the FCCPA. A debt collector can comply simultaneously with the FCCPA and the Bankruptcy Code. Additionally, if a debt collector has violated both the FCCPA and the Bankruptcy Code, a debtor's choice to pursue the remedies provided under the FCCPA does not stand as an obstacle to the objectives of the Bankruptcy Code. See id. (citing multiple United States Supreme Court cases to illustrate that "overlapping and not entirely congruent remedial systems can coexist . . ."). Furthermore, this Court has previously held there is "no reason why the rationale espoused under FDCPA precedent should not apply with equal force to FCCPA cases . . . [and] when applying the provisions of the FCCPA, 'great weight shall be given to the interpretations of . . . the federal courts relating to the federal Fair Debt Collection Practices Act.'" Trent v. Mortg. Elec. Registration Sys., Inc., 618 F. Supp. 2d 1356, 1361 (M.D. Fla. 2007) (quoting Fla. Stat. § 559.77(5) (2010)).

Like the invalid proof of claim in Crawford, a deficiency action could potentially

violate the automatic stay (or subsequent order of discharge) and, simultaneously, the FCCPA. Accordingly, the Court follows the logic in Randolph and holds that the Bankruptcy Code does not preempt the FCCPA in circumstances wherein a debt collector has arguably violated both statutes. Thus, Dyck-O'Neal's Motion to Dismiss Hernandez's FCCPA claim on grounds of preemption is denied.

### B. Consuegra's Motion to Dismiss Hernandez's Complaint

Consuegra argues that Hernandez's Complaint fails to state a claim upon which relief may be granted because (1) Hernandez is not the real party in interest pursuant to Federal Rules of Federal Procedure 17(a) (Doc. 11 at 4); (2) the June 4 letter was not an attempt to collect a debt (Doc. 11 at 5); and (3) the lawsuit is not subject to the FDCPA (Doc. 11 at 6).

#### 1. Whether Hernandez Is the Real Party in Interest Pursuant to Fed. R. Civ. P. 17(a)

Consuegra argues that Hernandez does not have standing because Hernandez is not the "real party in interest" pursuant to Federal Rules of Federal Procedure 17(a). (Doc. 11 at 4.) Consuegra argues that the trustee of Hernandez's bankruptcy estate is the real party in interest because once the petition for bankruptcy has been filed, all of a debtor's assets become part of the bankruptcy estate and are administered by the trustee. (Doc. 11 at 4.) Consuegra cites to Wieburg v. GTE Southwest Inc., 272 F.3d 302 (5th Cir. 2001) and Mele v. First Colony Life Ins. Co., 127 B.R. 82 (D.D.C. 1991); however, these cases are distinguishable. In Mele, the debtor's unliquidated lawsuit was filed prior to the petition for bankruptcy. In Weiburg, the debtor "filed for bankruptcy after the events giving rise to her" unliquidated lawsuit had occurred.

11

Wieburg, 272 F.3d at 306. Thus, the court held that the lawsuit was property of the bankruptcy estate; accordingly, the Trustee was the real party in interest. Id.

The Eleventh Circuit thoroughly reviewed this issue in Bracewell v. Kelley (In re Bracewell), 454 F.3d 1234 (11th Cir. 2006), in which the debtor filed for bankruptcy after a drought caused a significant reduction in the debtor's crop yields. Id. at 1236. While the debtor's bankruptcy was pending, the Agricultural Assistance Act of 2003 was signed into law. Id. Pursuant to the Act's assistance program, the debtor received $41,566 as compensation for his agricultural losses. Id. Even though the damage to the debtor's crops occurred prior to his bankruptcy, the Eleventh Circuit held that compensation proceeds were not property of the bankruptcy estate because the law creating the right to the payment did not exist at the time of the debtor's bankruptcy petition. Id. at 1247. Here, even though the foreclosure occurred prior to the bankruptcy petition, Consuegra filed the deficiency action after Hernandez filed her bankruptcy petition. Thus, like in Bracewell, the events giving rise to Hernandez's claims against Consuegra arose after her petition for bankruptcy. Accordingly, this FDCPA and FCCPA case is not property of Hernandez's bankruptcy estate; therefore, Hernandez is the real party in interest.

Even if Hernandez was not the real party in interest, both Weiburg and Mele stand for the proposition that dismissal would be improper. Wieburg, 272 F.3d at 309 (holding that the district court abused its discretion when dismissing the action "without explaining why the less drastic alternatives of either allowing an opportunity for ratification by the Trustee, or joinder of the Trustee, were inappropriate"); Mele,

12

127 B.R. at 87 (quoting Fed. R. Civ. P. 17(a)(3), which presently states that a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action"). Accordingly, dismissal would be improper even if the Court determined that Hernandez was not the real party in interest.

### 2. Whether the June 4 Letter Was an Attempt to Collect a Debt

Consuegra argues that the June 4 letter is a communication not made in connection with the collection of debt and, therefore, not a violation of the FDCPA. (Doc. 11 at 5-6.) In support of its assertion, Consuegra points to the letter's "Notice Regarding Bankruptcy Filings" clause, which states:

> This letter is not a demand for payment and it is not a notice of personal liability to you or anyone else who may have received a discharge of such debt in accordance with bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

(Id.) Hernandez argues, however, that whether the letter constitutes an attempt to collect a debt is an issue that should be determined by a jury. (Doc. 17 at 4.) Hernandez points out that a "Notice of Debt" clause—displayed on the first page—contained the following language: "This notice is a communication from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." (Doc. 1 at 11.) Hernandez asserts that because the bankruptcy filings clause was placed inconspicuously on the second page of the letter, and the notice of debt clause was placed conspicuously on the first page, the least-sophisticated consumer could have understood the letter to be an attempt to collect a debt. (Doc. 1 at 11.) Therefore,

13

Hernandez argues, the issue should be determined by the trier of fact. (Doc. 17 at 3.)

The Eleventh Circuit has provided an in-depth analysis of the least-sophisticated consumer standard. LeBlanc, 601 F.3d at 1194. In LeBlanc, the Eleventh Circuit noted that the "purpose of the 'least-sophisticated consumer' standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Id. (citing Jeter v. Credit Bureau Inc., 760 F.2d 1168, 1176 (11th Cir.1985)). In illustrating this concept, the Eleventh Circuit further noted that "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." Id. Like the June 4 letter in this case, the letter in LeBlanc contained the words "[t]his is an attempt to collect a debt and any information obtained will be used for that purpose." Id. at 1196. The court in LeBlanc ultimately held that the nature of the letter was an issue "best left to jury decision." Id.

Though a sophisticated consumer may have completely disregarded the June 4 letter in light of the pending bankruptcy, it "does not change its character," and the least-sophisticated consumer may very well have been deceived by its contents. Therefore, the Court finds that the issue of whether the least-sophisticated consumer would consider the June 4 letter to constitute a communication in connection with a debt collection activity is an issue best left to the finder of fact.[9]

---

[9] The Court considers the June 4 letter materially distinct from the May 2 letter discussed supra. The June 4 letter expressly stated that it was an attempt to collect a debt, and the May 2 letter expressly stated that it was not.

### 3. Whether the Lawsuit Is Subject to the FDCPA

For the reasons set forth above with regard to Hernandez's FDCPA claim against Dyck-O'Neal, the Court finds that Hernandez has alleged sufficient facts to plausibly support a cause of action under the FDCPA against Consuegra. Consuegra has presented no basis upon which to dismiss Hernandez's claim against it (Doc. 1, ¶¶ 34-41).

Accordingly, it is hereby

**ORDERED:**

1. Defendant Dyck-O'Neal's Motion to Dismiss Plaintiff's Complaint (Doc. 7) is **GRANTED** in part to the extent that ¶¶ 25.a – e of Count I are **STRICKEN WITH PREJUDICE**, and is otherwise **DENIED**.[10]

2. Defendant Consuegra's Motion to Dismiss Plaintiff's Complaint (Doc. 11) is **DENIED**.

3. Dyck-O'Neal and Consuegra shall each file an answer to the complaint no later than **May 27, 2015**.

4. The Court will issue a separate Order to establish other case deadlines which were vacated by earlier Order (Doc. 27).

**DONE AND ORDERED** at Jacksonville, Florida the 5th day of May, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

---

[10] Rather than require Plaintiff to file an amended complaint that omits these paragraphs, the Court will deem them stricken.

15

t
Copies:

Counsel of record